IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ERNEST PRIOVOLOS,

    Plaintiff,

v.

MONTGOMERY COUNTY DISTRICT
ATTORNEY OFFICE, et. al.,

    Defendants.

CIVIL ACTION
NO. 17-00985

## OPINION

**Slomsky, J.**                                                                                               February 15, 2018

### I.    INTRODUCTION

Pro se Plaintiff Ernest Priovolos brings this action under 42 U.S.C. § 1983 against the District Attorney's Office of Montgomery County, Pennsylvania, purported employees of the office and others.[1] He alleges claims that stem from his 1990 conviction for third degree murder and related offenses in the Montgomery County Court of Common Pleas for events that occurred in 1986. (Doc. No. 17.) Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. No. 20.) For the following reasons, the Court will grant Defendants' Motion to Dismiss the Second Amended Complaint in its entirety.

### II.    BACKGROUND

Relevant background information regarding Plaintiff's conviction and sentencing is found in a decision by the Superior Court of Pennsylvania dated February 22, 2017, which Defendants attached to their Motion to Dismiss as Exhibit L:

---

[1] In addition to the Montgomery County District Attorney's Office, the remainder of the Defendants as they were described by Plaintiff are "District Att. Keithly," "Bardo," "Steele," "Det. Molt" and "Officer Davis." (Doc. No. 17.)

1

> 1. On January 19, 1990, [Priovolos] was convicted of third degree murder and related offenses arising from the death of Cheryl Succa.
>
> 2. On January 28, 1991, the trial judge sentenced [Priovolos] to an aggregate term of 12-27 years in prison.
>
> 3. [Priovolos] filed a counseled direct appeal raising trial counsel's ineffectiveness.
>
> 4. The Superior Court of Pennsylvania affirmed the judgment of sentence and the Supreme Court of Pennsylvania denied [Priovolos's] counseled petition for allowance of appeal on November 20, 1992. [Commonwealth v. Priovolos, 609 A.2d 585 (Pa. Super. 1992) (unpublished memorandum), appeal denied, 617 A.2d 1273 (1992).]
>
> 5. Petitioner did not pursue an appeal to the United States Supreme Court, hence his judgment of sentence became final 90 days after the Supreme Court denied his petition for allowance of appeal, February 20, 1993.

(Doc. No. 20-12 at 3-4.)

By Order dated November 19, 2002, the Honorable Calvin S. Drayer of the Montgomery County Court of Common Pleas granted a motion by Priovolos to test the victim's bloodstained clothing as well as a light-brown hair discovered thereon for DNA. (Doc. No. 20-2 at 2.) Evidence admitted at a subsequent hearing established that the hair was discarded and the victim's panties were lost. (Doc. No. 20-3 at 2-6.) However, at Priovolos's request, the victim's shirt, jacket and vest were submitted to National Medical Services for testing. (Id.) Testing revealed that the stains on the victim's jacket and vest were "not blood, or are blood that has been aged or degraded beyond the limits of the test method utilized." (Id. at 3.) The only test that could provide a result revealed that a stain on the outside right sleeve of the jacket was female blood. (Id. at 4.)

Priovolos filed a Petition for a Rule to Show Cause in the Post-Conviction Relief Act (PCRA) court in January 2007 to request production of documents and evidence for and concerning DNA testing. (See Doc. No. 20-5 at 9-11.) By Order dated March 20, 2007, the

PCRA court granted the relief requested but refused to order that a female member of the victim's family provide Priovolos with a DNA sample.[2] (Id. at 2-3.)

The Commonwealth and other law enforcement agencies complied with the PCRA court's March 20, 2007 Order. (See Doc. Nos. 20-6; 20-7; 20-8.) But Priovolos evidently did not act to advance his interests until 2012, when, with counsel, he filed another PCRA petition:

> 8. On April 9, 2012, [Priovolos], represented by private counsel, Francis John Genovese, Esquire, filed another PCRA petition, his third. By that time, Judge Drayer had assumed Senior Judge status, so the case was reassigned to the Honorable Judge Emmanuel A. Bertin. Judge Bertin denied the third PCRA petition and [Priovolos] retained Mr. Genovese to appeal that order. That appeal

---

[2] The Order provided as follows:

a. FBI Laboratory personnel shall produce all documentation involved in the receipt, testing, and return of the evidence in this case from and to the Lower Moreland Township Police Department, at the Montgomery County District Attorney's office for examination by Defendant/Petitioner and his representatives;

b. FBI Laboratory personnel shall produce, as above directed, any and all pieces of evidence in this case remaining in their possession and custody, including but not limited to, cloth swatches, swabs, test results, etc.

c. Lower Moreland Township Police Department shall produce, as above directed, any and all documentation and/or correspondence to, and from the [FBI] Laboratory regarding the testing of evidence in this case, and all chain of custody documentation regarding the evidence in this case, as well as producing the actual physical evidence.

d. Montgomery County Detective's and District Attorney's Office shall produce, as above directed, any and all documents regarding the testing of the evidence in this case, as well as documents pertaining to the chain of custody of same, as well as producing the actual physical evidence.

e. [Stricken.]

f. The victim's bra and socks, as well as any other evidence as above produced, shall be made available to National Medical Services Inc. for further DNA analysis.

(Doc. No. 20-5 at 2-3.)

was indexed at docket no. 72 EDA 2013. Mr. Genovese perfected the appeal, filing a timely appellate brief in the process, but the Superior Court affirmed Judge Bertin's order.

9. While the appeal regarding the third PCRA petition was still pending before the Superior Court, Mr. Genovese acquired a new report from an expert witness on the subject of DNA evidence. On March 19, 2013, Mr. Genovese filed another PCRA petition, [Priovolos's] fourth, based on the new DNA report.

10. At the time, March 19, 2013, the appeal from the denial of the third petition, indexed at docket no. 72 EDA 2013, remained pending. Mr. Genovese did not wait for disposition of that appeal before filing the fourth PCRA petition because he wanted to file it within sixty days after having received the DNA report.

11. Judge Bertin denied the fourth PCRA petition on the authority of Commonwealth v. Lark, 746 A.2d 585 (Pa. 2000) (establishing earliest time a PCRA petitioner may file a PCRA petition). Mr. Genovese appealed the order on behalf of [Priovolos], which appeal was indexed at docket no. 1778 EDA 2013. After doing so, Mr. Genovese met with [Priovolos] and advised him that he would not file a brief or otherwise litigate the appeal. The Superior Court dismissed the appeal on October 4, 2013, based on the failure to file a brief.

12. Mr. Genovese filed a fifth PCRA petition on [Priovolos's] behalf on October 29, 2013, after the Superior Court had disposed of the appeals indexed at docket nos. 72 EDA 2013 and 1778 EDA 2013. The claim for relief in the fifth petition is based on the same facts and legal theory as the fourth. For nearly a year, no activity on the record took place in the case.

13. On September 9, 2014, [Priovolos], acting pro se, filed an application for relief that Judge Bertin deemed his sixth PCRA petition. On September 19, 2014, [Priovolos] filed another pro se document, in the form of a letter dated September 4, 2014, addressed to Judge Drayer. The letter was forwarded to Judge Bertin, who deemed it to be [Priovolos's] seventh PCRA petition.

14. Judge Bertin ordered the Commonwealth to answer the [] sixth and seventh PCRA petitions, and on the day before he retired he denied them. [Priovolos] filed a timely notice of appeal, which was indexed at docket no. 243 EDA 2015.

15. The appeal indexed at docket no. 243 EDA 2015 was rotated to the undersigned judge for the filing of an opinion and other ancillary matters. The appeal was discontinued August 12, 2015, by leave of the Superior Court of Pennsylvania upon application by Andrew F. Schneider, Esquire, who had entered his appearance on behalf of [Priovolos] while the appeal was pending.

16. At the time that appeal was discontinued, the sixth and seventh PCRA petitions had been disposed of, but the fifth PCRA petition had not. When the

appeal was discontinued, [the Superior Court of Pennsylvania] re-acquired jurisdiction to inquire into whether it could exercise jurisdiction to dispose of the fifth PCRA petition.

(See Doc. No. 20-12 at 4-5 (last alteration added) (citation omitted).)

On February 27, 2017, the Pennsylvania Superior Court in Commonwealth v. Priovolos affirmed the June 13, 2016 Order dismissing Priovolos's fifth PCRA petition as time-barred under the PCRA. (Id.) The Superior Court noted that "Priovolos asserted in March, 2003, while he was still incarcerated, his family had 'requested and received copies of the Laboratory Reports prepared by the FBI in the Cheryl Succa Death Investigation, pursuant to the Freedom of Information Act.'" (Id. at 8.) Because he did not file a PCRA petition within the requisite 60-day period under the PCRA, the court concluded that Priovolos's petition was properly dismissed as time-barred under the PCRA. (Id. at 9-10); see 42 Pa. Cons. Stat. § 9545(b)(2). On March 17, 2017, Plaintiff filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which the court denied on July 19, 2017. (Doc. No. 20-13 at 3.)

Despite the ongoing litigation in the Pennsylvania state courts, Plaintiff filed the instant action in this Court on March 13, 2017, again raising the issue of the production of the DNA evidence relative to his 1990 conviction, as he seeks to collaterally attack his conviction and judgment of sentence. (Doc. No. 17.) Specifically, he seeks:

> INJUNCTIVE RELEIF [SIC] . . . FROM JUDGE DRAYER['S] 2007 COURT ORDER [BECAUSE PLAINTIFF] HAS NOT HAD PROPER DUE PROCESS IN TEN YEARS. THIS INCLUDING THE NON-COMPLIANCE OF THE PROCEDURAL ORDERS, INCLUDING NOT ALLOWING A FAMILY MEMBER [OF THE VICTIM] TO PRODUCE A SWAB.
>
> * * * *
>
> THE PLAINTIFF IS SEEKING A SPECIFIC COURT ORDER THAT STATES THE DA['S] OFFICE OF MONTGOMERY COUNTY MUST COMPLY WITH JUDGE DRAYER['S] ORDER ISSUED IN 2007 AND A SPECIFIC ORDER

> [FOR] . . . DNA FROM A FEMALE FAMILY MEMBER OF THE VICTIM'S FAMILY.

(Id. at 1, 4.)

Plaintiff further states that "THE NEW DNA P[ENNSYLVANIA] STATE LAW TITLE 42 PA. SA 9543.1 AND F1 ALSO THE ALREADY ISSUED STATE ISSUED ORDERS FROM JUDGE DRAYER . . . SHOULD BE STRICTLY REINFORCED BY THIS FEDERAL COURT." (Id. at 3.)

On August 2, 2017, Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. No. 20.) On August 8, 2017, Plaintiff filed two motions, both asking the Court to rule in favor of the Second Amended Complaint. (Doc. Nos. 21-22.) The Court will construe these motions as Plaintiff's Response in Opposition to Defendants' Motion to Dismiss. Defendants' Motion is now ripe for a decision.

## III. ANALYSIS

Defendants move this Court to dismiss Plaintiff's Second Amended Complaint for, inter alia, lack of jurisdiction and failure to state a claim. Specifically, Defendants argue that Plaintiff's § 1983 claim is barred by a two-year statute of limitations; Plaintiff's claims are also barred under the Rooker-Feldman doctrine because it deprives this Court of jurisdiction over them; and Plaintiff otherwise fails to state a claim upon which relief can be granted. (Doc. No. 20 at 8-16.)

Plaintiff's Second Amended Complaint asserts that the District Attorney's Office violated state court orders in preventing him from obtaining evidence regarding DNA testing. (Doc. No. 17.) For reasons stated below, Defendants' Motion to Dismiss will be granted and Plaintiff's Second Amended Complaint will be dismissed.

## A. Plaintiff's § 1983 Claim Is Barred by the Two-Year Statute of Limitations

Defendants argue that Plaintiff's § 1983 claim requesting the production of DNA related documents and clothing is untimely. The clothing items were collected before Plaintiff's criminal trial, which concluded in 1990. Defendants assert that it is well beyond the two-year statute of limitations during which time Plaintiff was permitted to bring a claim regarding Judge Drayer's 2007 Order that Plaintiff seeks to have this Court enforce, and the evidentiary production that followed. Defendants are correct in this regard.

The circumstances here are similar to those in Walker v. Williams, a prior case before this Court in which a man convicted of murder sought clothing and other evidence for DNA testing in an effort to prove his proclaimed innocence. No. 15-1567, 2016 WL 687186 (E.D. Pa. Feb. 18, 2016) (Slomsky, J.). Applying the facts in the instant case to this Court's analysis in Walker v. Williams, the same result is appropriate:

> The Pennsylvania statute of limitations for personal injury claims applies when the underlying cause of action is for a constitutional violation of procedural due process. Sameric Corp. of Delaware. Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (holding that "in actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury . . . [which] is two years . . . [for] due process claims.") In Pennsylvania, the statute of limitations to bring a personal injury suit is two years. 42 Pa. Cons. Stat. § 5524. The date on which the applicable statute of limitations tolls is "when the plaintiff knew or should have known of the injury upon which its action is based." Id. Plaintiff claims that his procedural due process rights have been violated by the denial of access to the items requested for post-conviction testing. Thus, this claim is treated as a personal injury claim under § 1983 and is subject to Pennsylvania's two-year statute of limitations.
>
> Plaintiff filed the instant civil rights suit in this Court on [March 13, 2017]. However, as Plaintiff concedes, he [secured a court order in 2007 regarding the items and DNA testing at issue] . . . . Considering the dates of these requests, Plaintiff "knew or should have known of the injury upon which its action is based"—that is, the deprivation of evidence on which his § 1983 claim is predicated—well over two years before [March 13, 2017], when he filed the present § 1983 suit. Thus, Plaintiff's claim is time-barred under Pennsylvania's

7

two-year statute of limitations, and for this reason his [Second Amended Complaint] must be dismissed.

Id. at *2-3 (first and second alterations in original).

Therefore, Plaintiff's claims will be dismissed as time barred under the two-year statute of limitations. 42 Pa. Cons. Stat. § 5524.

### B. Plaintiff's Claims Also Are Barred Under the Rooker-Feldman Doctrine

Under Federal Rule of Civil Procedure 12(b)(1), motions challenging this Court's jurisdiction fall into two categories: a facial or a factual attack on jurisdiction. A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" Id. at 346 (quoting Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)). When a factual challenge is made, there is no presumption of truthfulness attached to the plaintiff's allegations. Id. (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

Defendants appear to make a factual attack, arguing that the Court is without jurisdiction to review Plaintiff's claims under Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) (collectively, the "Rooker-Feldman doctrine"). Under the Rooker-Feldman doctrine, the United States Supreme Court is the only federal tribunal that has jurisdiction to review the final judgments of state courts. Gulla v. N. Strabane Twp., 146 F.3d 168, 171 (3d Cir. 1998). Lower federal courts, such as this District Court, are not permitted to "sit in direct review of the decisions of state [courts]." Id. Applying

this principle, Defendants are correct that this Court does not have jurisdiction to review Plaintiff's claims.

The Rooker-Feldman doctrine precludes a federal district court from exercising subject-matter jurisdiction over a suit that is essentially an appeal of a state court decision. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284.

The Rooker-Feldman doctrine applies only where: (1) the plaintiff in the federal action lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the judgment was entered before the federal action was filed; and (4) the plaintiff seeks federal review and rejection of the state court judgment. Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (citing Exxon Mobil, 544 U.S. at 284). Factors two and four have been characterized as substantive; and one and three, procedural. Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). Procedural posture will rarely be at issue. See id. at 89. The factors that typically drive the inquiry are two and four, the substantive ones. They are the key to determining whether a federal suit brought by a state court loser is barred by the doctrine or presents a non-barred independent claim. Id. at 85-87.

The doctrine is narrowly applied. Id. at 292. It is not implicated "simply because a party attempts to litigate in federal court a matter previously litigated in state court." Id. at 293. It does not apply when the federal plaintiff asserts an independent claim, even one that contradicts the state court's legal conclusions. Id.

9

Here factors one and three, supra, are satisfied. Plaintiff's petition for post-conviction relief was denied by the state courts and judgment was entered before he filed this action. (See Doc. No. 20-12 at 4-5.) Hence, this Court will consider whether his Second Amended Complaint seeks a remedy for an injury caused by the state court's judgment and, relatedly, whether his Second Amended Complaint is essentially a request for this Court to review and reject that judgment.

As noted, Plaintiff's PCRA petition was denied by the state courts. He responded by suing the District Attorney's Office, which opposed his filings. To reiterate, Plaintiff seeks in this Court:

> INJUNCTIVE RELEIF [SIC]... FROM JUDGE DRAYER['S] 2007 COURT ORDER [BECAUSE PLAINTIFF] HAS NOT HAD PROPER DUE PROCESS IN TEN YEARS. THIS INCLUDING THE NON-COMPLIANCE OF THE PROCEDURAL ORDERS, INCLUDING NOT ALLOWING A FAMILY MEMBER [OF THE VICTIM] TO PRODUCE A SWAB.
>
> * * * *
>
> THE PLAINTIFF IS SEEKING A SPECIFIC COURT ORDER THAT STATES THE DA['S] OFFICE OF MONTGOMERY COUNTY MUST COMPLY WITH JUDGE DRAYER['S] ORDER ISSUED IN 2007 AND A SPECIFIC ORDER [FOR]... DNA FROM A FEMALE FAMILY MEMBER OF THE VICTIM'S FAMILY.

(Doc. No. 17 at 1, 4.)

Further, Plaintiff wants "THE NEW DNA P[ENNSYLVANIA] STATE LAW TITLE 42 PA. SA 9543.1 AND F1 ALSO THE ALREADY ISSUED STATE ISSUED ORDERS FROM JUDGE DRAYER . . . [TO] BE STRICTLY REINFORCED BY THIS FEDERAL COURT." (Id. at 3.) Given that Plaintiff has filed several PCRA petitions since Judge Drayer issued the 2007 Order, which were all denied in state court, the relief he seeks in this Court is a remedy for those state court judgments. He asks this Court to reject them. (See Doc. No. 20-12 at 4-5.)

This scenario falls squarely within the Rooker-Feldman prohibition. Therefore, Plaintiff's suit is barred under the Rooker-Feldman doctrine because the doctrine deprives this Court of jurisdiction.

### C. Plaintiff Otherwise Fails to State a Claim upon Which Relief Can Be Granted

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating

whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Plaintiff's Second Amended Complaint alleges that the District Attorney's Office violated state court orders in preventing him from obtaining evidence regarding DNA testing. (Doc. No. 17.) However, he has pursued litigation in state court regarding Judge Drayer's March 2007 Order. And the PCRA court, the same court that issued that Order, has since rejected his present claims under the PCRA multiple times. (Doc. No. 20-12 at 4-5.) Therefore, his claims in this Court ask it to enforce a state court order in a manner that is contrary to the assessment of the issuing court. This task is not a function of a federal district court. Therefore, Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted.

## IV. CONCLUSION

For these reasons, Defendants' Motion to Dismiss (Doc. No. 12) will be granted and Plaintiff's Motions (Doc. Nos. 21-22) will be denied. An appropriate Order follows.